UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRUNO CHOINIERE          )
                                   )
      vs.               )     Cause No. 3:07-CV-27 RM
                                   )     (Arising from Cause No: 3:05-CR-56)
UNITED STATES OF AMERICA   )

OPINION AND ORDER

A grand jury indicted Bruno Choiniere, then a licensed chiropractor, on thirty-four counts of health care billing fraud, money laundering, and fraudulent concealment of overpayment of health care benefits stemming from a back belt that he developed and billed to Medicare, Medicaid, and private insurance companies. After an eleven-day trial, a jury returned a guilty verdict on all counts. Mr. Choiniere was sentenced to 151 months' imprisonment, with two years supervised release. Mr. Choiniere appealed, raising jury instruction and sentencing issues; the court of appeals affirmed Mr. Choiniere's conviction and sentence.

On September 2, 2008, Mr. Choiniere, acting *pro se*, filed this petition under 28 U.S.C. § 2255, subsequently filing supplemental briefs in support of his petition. Mr. Choiniere raises numerous issues in his petition primarily attacking the court's subject matter jurisdiction and arguing ineffective assistance of counsel at both the trial and appellate level. Mr. Choiniere also makes several requests for discovery and appointment of counsel. For the following reasons, the court denies Mr. Choiniere's petition, requests for discovery and motion to appoint counsel.

BACKGROUND

Mr. Choiniere, a French Canadian citizen and licensed chiropractor since 1992, practiced in South Bend, Indiana from 2002 until his 2005 indictment. In 2003, while working at a health clinic, Mr. Choiniere developed a back belt after hearing patients complaining of back braces that were too rigid. Mr. Choiniere's back belt was made of leather, some strips of plastic and velcro. Mr. Choiniere spent several months developing his belt to mimic the back's inward curve to combat the pressure against the spine caused by sitting. The back belt was designed for use with two pillows that he also developed. Mr. Choiniere began dispensing the belt and pillows to patients at the clinic.

Mr. Choiniere eventually left the health clinic and went out on his own. He promoted his belt by holding "back pain relief clinics" specifically targeted to elderly, handicapped and low income persons. During those clinics, Mr. Choiniere either performed cursory examinations or none at all: no x-rays or MRI tests were taken, there was no heat or ice therapy and usually no chiropractic adjustments. The examinations didn't follow the usual protocol for chiropractic examinations. Mr. Choiniere would take medical histories of his patients only sometimes and testified that if he was too busy, he would fill out the patient's chart when he returned to his office or home from the clinic. The government presented evidence that Mr. Choiniere manipulated the records for purposes of receiving reimbursements for his belts. Mr. Choiniere offered the clinic attendees free food

(usually sandwiches or donuts), free short massages from a massage therapist, free consultations and on a few occasions gave his patients free pillows. Two salespersons working on commission assisted him.

The jury heard testimony that Mr. Choiniere dispensed belts to many persons who didn't have back pain and for whom wearing a lumbar support wasn't medically appropriate. Some people who received the belts were more than seven months pregnant, others had kidney and liver conditions, and one patient had a grapefruit sized tumor on her spine. Some witnesses testified that everyone examined received a brace, while others testified that Mr. Choiniere turned people away because they didn't qualify. There were instances where Mr. Choiniere billed twice for a single belt or billed for a belt that was never actually delivered to the patient or that the patient had rejected. At times, Mr. Choiniere offered refunds to complaining patients.

Mr. Choiniere billed Medicare and Indiana Medicaid more than $1,300 for the belt, representing that it was a "custom-fabricated molded-to-patient lumbar-sacral support." The jury heard evidence that this was untrue, and that the belt should have been billed for less than $50. In less than two years, Mr. Choiniere billed Medicare, Indiana Medicaid, and private insurance companies about $2 million for the back belt. He was paid more than $1.5 million.

Counts 1-3 of Mr. Choiniere's indictment charged him with engaging in a scheme to defraud Medicare, Indiana Medicare and twenty-one private health insurers in violation of 18 U.S.C. § 1347. Those counts alleged that Mr. Choiniere

obtained money from Medicare, Indiana Medicare, and the private health insurers by false pretenses and statements, in that he didn't dispense custom fabricated back braces as represented, submitted phony and fraudulent medical necessity letters, double-billed for belts, and improperly solicited patients. Count 4 charged Mr. Choiniere with concealing and failing to disclose information that affected his initial or continued right to payments from Medicare and Indiana Medicare in order to fraudulently keep payments in an amount greater than was due in violation of 42 U.S.C. § 1320a-7b(a)(3). The remaining counts charged Mr. Choiniere with engaging in thirty monetary transactions between July 2003 and March 2005 each involving more than $10,000 in property derived from his health care billing fraud in violation of 18 U.S.C. § 1957.

Six days after Mr. Choiniere was arrested, the United States Attorney's Office notified the Canadian Consulate in Chicago of Mr. Choiniere's arrest. After hearing testimony from more than seventy-five government witnesses and sixteen defense witnesses, including the defendant, the jury returned a guilty verdict on all counts. He appealed, arguing that the district court committed reversible error when it refused to give two proposed intent to defraud jury instructions and wrongly applied a sentencing enhancement for using minors in furtherance of his scheme. The court of appeals affirmed Mr. Choiniere's conviction and 151-month sentence. United States v. Choiniere, 517 F.3d 967, 974 (7th Cir. 2008).

Most of the arguments in Mr. Choiniere's § 2255 petition relate to his claim that this court lacked subject matter jurisdiction to convict him, that

administrative agents were improperly involved in obtaining a search warrant of his documents after the case had been referred to the Department of Justice for criminal prosecution, and that his rights under the Vienna Convention were violated. Mr. Choiniere also argues that his counsel was ineffective for not raising those issues during trial or on appeal, not seeking a motion to suppress evidence, not impeaching certain witnesses, not subpoenaing Mr. Choiniere's telephone records, and not raising an argument as to the insufficiency of evidence.

The government filed a response asserting that jurisdiction was proper pursuant to 18 U.S.C. § 3231, that it promptly notified the Canadian consulate in Chicago of Mr. Choiniere's arrest, and that Mr. Choiniere's counsel's performance was neither deficient nor prejudicial. The government reasons that the issues Mr. Choiniere believes his counsel should have raised were either invalid, immaterial or too insignificant to have affected the jury's determination.

Mr. Choiniere filed a reply alleging additional grounds of ineffective assistance involving the definition of "proceeds" in the money laundering statute and the application of Apprendi to his sentencing.

ANALYSIS

Relief under § 2255 is reserved for extraordinary situations. Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996) (citing Brecht v. Abrahamson, 507 U.S. 619, 633-634 (1993)). "Relief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a

fundamental defect which inherently results in a complete miscarriage of justice."

Kelly v. United States, 29 F.3d 1107, 1112 (7th Cir. 1994) (quotations omitted), *overruled on other grounds by* United States v. Ceballos, 302 F.3d 679 (7th Cir. 2002). A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Because the motion and files and records in this case conclusively demonstrate that Mr. Choiniere isn't entitled to relief, the court needs no evidentiary hearing to decide the matters.

*Subject Matter Jurisdiction*

Mr. Choiniere maintains that after Managed Health Services (MHS)[1] conducted an audit that resulted in a two page peer review report, he requested an appeal of the report, but was denied because the case had been referred to the United States Attorney's Office.[2] Mr. Choiniere believes that the case should have been remanded to the agency for further development and that this court could only review the agency's determination once the administrative process was complete. He argues that the charges in the Indictment arose under the "Medicare Act" and so were within the agency's exclusive jurisdiction. Before the case could

---

[1]MHS is a contract administrator for Medicare and Medicaid, which is administrated by the Center for Medicare and Medicaid Services, a component of the United States Department of Health and Human Services.

[2]Mr. Choiniere indicates that MHS referred the case to the Indiana Medicaid Fraud Control Unit, who referred the case for joint investigation to the office of Inspector General of HHS, and before reaching a final disposition, the agency referred the case to the DOJ to proceed with criminal prosecution.

be referred, Mr. Choiniere contends that pursuant to 42 U.S.C. § 405, the agency needed to either exclude him from the federal health care programs or provide him the opportunity to appeal the agency's adverse determination.

This court has jurisdiction over offenses against the laws of the United States. 18 U.S.C. § 3231. The government isn't required to pursue an administrative avenue for recovery before filing a criminal prosecution when one is alleged to have violated both administrative guidelines and a federal criminal statute. See United States v. Kruper, No. 3:07-CR-76, 2007 WL 3046455, *1 (N.D. Ind. 2007) (unpublished) (citing United States v. Paternostro, 966 F.2d 907, 911 (5th Cir. 1992)). "Indeed, the government may exercise its discretion to enforce the law by a criminal prosecution regardless of the availability of an administrative review process." See United States v. Kruper, 2007 WL 3046455, *1 (citing United States v. Seibert, 403 F. Supp. 2d 904, 921 (S.D. Iowa 2005) (holding that the government need not wait for [the defendant] to exhaust his administrative appeals because the exhaustion requirement is only applicable to individuals appealing administrative rulings.) (internal citations omitted)).

Mr. Choiniere's cited cases are irrelevant here because they discuss civil cases and don't prevent the government from enforcing a criminal statute; they merely stand for the proposition that individuals must exhaust administrative remedies before bringing actions in federal court. See e.g. United States v. Seibert, 403 F. Supp. 2d at 917-21 (denying defendants' claim that the indictment for health care fraud should be dismissed because he was first entitled to proceed

through the administrative appeal process). "While . . . most individuals contesting a determination that they are not compliant with Medicare regulations must present their cases to the agency prior to review in federal court, that rule is not applicable to criminal actions commenced by the government." <u>United States v. Seibert</u>, 403 F. Supp. 2d at 918-919 (internal quotations and citation omitted). Sections 405(h) and (g) don't require the government to seek an administrative remedy before prosecuting. <u>Id.</u> at 920.

*Ineffective Assistance Counsel*

Mr. Choiniere's remaining claims are procedurally defaulted, except to the extent they arise under his claim of ineffective assistance of counsel.[3] "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003). Mr. Choiniere must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense rendering the proceeding fundamentally unfair and the result unreliable. <u>See</u> <u>Jones v. Page</u>, 76 F.3d 831, 840 (7th Cir. 1996) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). The court must

---

[3]With the exception of claims for ineffective assistance of counsel, constitutional issues that weren't raise on direct appeal, can be brought in a habeas petition only if the petitioner demonstrates "cause for the procedural default as well as actual prejudice from the failure to appeal," <u>Barker v. United States</u>, 7 F.3d 629, 632 (7th Cir. 1993), or where the petitioner establishes that the district court's failure to consider the issue would result in a fundamental miscarriage of justice, <u>see</u> <u>Galbraith v. United States</u>, 313 F.3d 1001, 1006 (7th Cir. 2002) (internal quotation marks and citation omitted).

deny an ineffective claim if the petitioner makes an insufficient showing on either prong. Id. at 697.

To establish deficient performance, Mr. Choiniere "must establish specific acts or omissions of his counsel that constitute ineffective assistance." See Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003). The court then decides whether his counsel's acts or omissions "fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." See Barker v. United States, 7 F.3d 629, 633 (7th Cir. 1993) (citing Strickland v. Washington, 466 U.S. at 690). In making this determination, the court considers "the reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct . . ." United States v. Lindsay, 157 F.3d 532, 534-535 (7th Cir. 1998). Scrutiny of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See Coleman v. United States, 318 F.3d 754, 758 (7th Cir. 2003).

The reasoning in Strickland also applies to a claim that counsel failed to raise the correct issues on appeal. Mason v. Hanks, 97 F.3d 887, 892 (7th Cir. 1996). Counsel's performance is deficient if counsel omits a "significant and obvious issue" without a legitimate strategic reason. Mason v. Hanks, 97 F.3d at 893 (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)). "[C]ounsel is not required to raise every non-frivolous issue on appeal." Martin v. Evans, 384 F.3d at 852 (citing Mason v. Hanks, 97 F.3d at 893). "One of the principal functions of

appellate counsel is winnowing the potential claims so that the court may focus on those with the best prospects." <u>U.S. v. Best</u>, No. 2:08-CV-59, 2008 WL 4414686, *5 (N.D. Ind. 2008) (quoting <u>Page v. United States</u>, 884 F.2d 300, 302 (7th Cir.1989)).

To establish prejudice, Mr. Choiniere must do more than show that "the errors had some conceivable effect on the outcome of the proceeding." <u>Strickland v. Washington</u>, 466 U.S. at 693. He must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different,' meaning 'a probability sufficient to undermine confidence in the outcome.'" <u>Eckstein v. Kingston</u>, 460 F.3d 844, 848 (7th Cir. 2006) (quoting <u>Strickland v. Washington</u>, 466 U.S. at 694). Stated differently, Mr. Choiniere must establish that "effective assistance would have given him a reasonable shot at acquittal." <u>Gibbs v. VanNatta</u>, 329 F.3d 582, 584 (7th Cir. 2003); <u>see</u> <u>Andrashko v. Borgen</u>, 88 Fed. Appx. 925, 929 (7th Cir. 2004) (unpublished) (petitioner must specifically explain how the outcome at trial would have been different absent counsel's ineffective assistance). Similarly, prejudice arises from appellant counsel's error "when that omitted issue 'may have resulted in a reversal of the conviction, or an order for a new trial.' " <u>Mason v. Hanks</u>, 97 F.3d at 893 (citing <u>Gray v. Greer</u>, 800 F.2d at 646).

"In weighing the effect of counsel's errors, the court must consider the totality of the evidence . . . . [A] verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that

is only weakly supported by the record." <u>Eckstein v. Kingston</u>, 460 F.3d at 848 (quoting <u>Hough v. Anderson</u>, 272 F.3d 878, 891 (7th Cir. 2001)).

*Administrative Agents' Involvement in Criminal Prosecution*

Mr. Choiniere alleges that the Indiana Medicaid Fraud Control Unit, part of the Office of the Indiana Attorney General, and the Inspector General of the U.S. Department of Health and Human Services were involved in obtaining a search warrant after the case had been referred to the DOJ for purposes of criminal investigation. Mr. Choiniere contends that Medicare agents improperly acted as case agents in his criminal prosecution in violation of 42 U.S.C. 1320a-7c and 1396b(q).

In the context of the IRS's investigatory power, the Supreme Court has noted that once a matter has been referred for criminal prosecution, government civil authorities cannot continue to obtain and prepare information for the government's prosecutors. <u>United States v. LaSalle Nat. Bank</u>, 437 U.S. 298, 315-316 (1978). In <u>LaSalle National Bank</u>, the IRS, pursuant to 26 U.S.C. § 7602, used its civil summons power to pursue an investigation for the purpose of unearthing evidence of criminal conduct. <u>Id.</u> at 301, 304. The Court found that although the civil and criminal elements of a tax enforcement action are "inherently intertwined," Congress neither intended to increase the discovery power of the DOJ for the criminal action or to infringe upon the use of the grand jury for criminal discovery when it gave the IRS broad summons powers in civil actions.

Id. at 312. If the defendant challenges a summons, the IRS must show that it issued the summons in good faith and before it referred the case to the DOJ for criminal investigation. Id. at 318.[4]

In United States v. Cahill, the Seventh Circuit reviewed LaSalle National Bank when addressing the defendant's claim that a civil investigation conducted by the Federal Home Loan Bank Board was used impermissibly to gather information for its criminal investigation. United States v. Cahill, 920 F.2d 421, 428 (7th Cir. 1990). The court distinguished LaSalle National Bank, stating that unlike the IRS, the FHLBB has only limited civil authority and has no ability to investigate criminal cases; the type of abuse found in LaSalle National Bank therefore is minimized when the FHLBB pursues a civil investigation. Id. at 428. The court also distinguished LaSalle National Bank because the two investigations were, at all times, separate, distinct and independent of each other. As such, the civil investigation wasn't conducted for the purpose of obtaining evidence for the criminal prosecution. Id.

Other jurisdictions have declined to apply LaSalle National Bank outside the context of the IRS. In fact, courts have found that the government can use health care administrative subpoena power to investigate charges in a pending

---

[4]The reasoning in LaSalle National Bank has at least been partially limited by a 1982 amendment to § 7602. See United States v. G & G Adver. Co., 762 F.2d 632, 634 n. 1 (8th Cir. 1985) ("The requirement that the summons not issue for a solely criminal investigation . . . has been negated by the 1982 amendment to § 7602(b) which allows inquiry into 'any offense,' so long as the case has not been turned over to the Justice Department."); United States v. Cahill, 920 F.2d 421, 428 (7th Cir. 1990) (stating that there is debate whether LaSalle National Bank remains good law after the 1982 amendments, but proceeding as though it does).

indictment pursuant to 18 U.S.C. § 3486, which authorizes the Attorney General to subpoena records and information relevant to "any investigation" of a "Federal health care offense."[5] See Doe v. United States, 253 F.3d 256, 264 (6th Cir. 2001) (noting that the Court's decision in LaSalle was "based not on constitutional considerations, but on Congress's failure to give the IRS the statutory authority to use its subpoena power in this fashion"); see also United States v. Lazar, M.D., 2006 WL 3761803, *6-8 (W.D. Tenn. 2006) (finding that the government could use its health care administrative subpoena powers to investigate charges in a pending indictment, reasoning that "[t]he LaSalle rule applies solely to the statutory scheme of the [IRS] . . .") (citations omitted) and cases cited therein; see generally 1 Criminal Practice Manual § 16:4 (2008).

Parallel or overlapping criminal and civil investigations generally aren't objectionable. See United States v. Medic House Inc., 736 F. Supp. 1531, 1537 (W.D. Mo. 1989) ("Even if there had been a referral for criminal prosecution, and/or a separate criminal investigation was under way, the [Inspector General] still could issue a subpoena for civil investigation - absent specific evidence of agency bad faith or malicious governmental tactics."); see also United States v. Shinderman, M.D., 432 F. Supp. 2d 149, 152 (D. Maine 2006) (rejecting "the argument that when the government's civil investigation turned into a criminal investigation or when the government undertook dual civil and criminal

_____

[5]The Code broadly defines a "Federal health care offense" as a violation of, or a conspiracy to violate, a number of health-care related offenses, including 18 U.S.C. § 1347 (health care fraud). 18 U.S.C. § 24(a)(1).

investigations, somehow its civil investigating authority lapsed"); <u>United States v. Montefiore</u>, 1998 WL 188849, *5-6 (E.D. Pa. 1998) (finding that the alleged cooperative efforts between HUD Inspector General, the HUD investigators, the USAO, and the FBI were permissible); <u>United States v. Educational Devel. Network Corp.</u>, 884 F.2d 737, 741-743 (3rd Cir. 1989) (finding that where the USAO and Department of Defense Inspector General were conducting a joint investigation, the USAO didn't act in bad faith when presenting facts uncovered through IG subpoenas and search warrant to grand jury).

Mr. Choiniere makes broad allegations that the civil case and criminal case were impermissibly intertwined and as a result, the evidence seized by the administrative agencies after the case was referred to the DOJ for criminal prosecution should be suppressed.[6] The court of appeals in <u>United States v. Cahill</u>, 920 F.2d 421, distinguished <u>LaSalle National Bank</u> without addressing whether it is applicable outside the IRS context or more specifically, whether it is applicable to joint investigations of health care fraud. This court holds that <u>LaSalle National Bank</u> is limited and not applicable to the present case. It is common in this type of white collar investigation to have parallel proceedings by different government agencies. <u>See</u> <u>generally</u>, Evans, Virginia and Roann Nichols, *Parallel Proceedings: Joint Civil and Criminal Prosecution of Healthcare Cases*, AHLA 2006 FRAUD AND COMPLIANCE FORUM, (2006). Mr. Choiniere hasn't referred to

---

[6]The parties haven't provided the court with specifics as to the investigation conducted or search warrants issued in this case. For purposes of Mr. Choiniere's petition, the court assumes that the investigations were intertwined.

evidence to establish that the government acted in bad faith when conducting its investigation and obtaining evidence or that the administrative agents were acting beyond their regulatory powers. He merely makes conclusory allegations that the agents shouldn't have been involved in the search after referral of the case to the DOJ. A suppression motion on this basis would have been unsuccessful; that Mr. Choiniere's counsel didn't raise a motion on these grounds was neither deficient nor prejudicial.

## Article 36 of the Vienna Convention

Mr. Choiniere argues that his counsel was ineffective for not advising him of his rights under Article 36 of the Vienna Convention. The Vienna Convention "is an intenternational treaty that governs relations between individual nations and foreign consular officials." Osagiede v. United States, 543 F.3d 399, 402 (7th Cir. Sept. 9, 2008) (quoting Sanchez-Llamas v. Oregon, 548 U.S. 331, 336 (2006)). Article 36 provides a detained foreign national with certain rights and requires the detaining authority to: "(1) inform the consulate of a foreign national's arrest or detention without delay; (2) forward communications from a detained national to the consulate without delay, and (3) inform a detained foreign national of 'his rights' under Article 36 without delay." Osagiede v. United States, 543 F.3d at 402 (citing Vienna Convention, art. 36(1)(b), 21 U.S.T. 77, 596 U.N.T.S. 261). These rights are commonly referred to as the "right to consular assistance," and are codified in federal regulations to ensure compliance with Article 36. Osagiede v.

United States, 543 F.3d at 402 (citing 28 C.F.R. § 50.5 (2003) and 8 C.F.R. § 236.1(e) (2003)). The Osagiede court detailed the importance of consulate assistance: "[t]his assistance can be invaluable because cultural misunderstandings can lead a detainee to make serious legal mistakes . . . ." Osagiede v. United States, 543 F.3d at 403. The consulate can offer many services to the detainee, including providing critical resources for legal representation and case investigation, conducting investigations, filing amicus briefs, locating witnesses and evidence from the home country, and even intervening directly in a proceeding if necessary. Id.

In Osagiede, the defendant, a Nigerian national, was arrested and although federal agents sent a consular notification form to the Nigerian Consulate, the defendant was never notified of his right to contact the Nigerian consulate pursuant to Article 36 and the federal regulations. Osagiede v. United States, 543 F.3d at 404. The defendant petitioned for habeas corpus relief based on ineffective assistance of counsel. Id. The court found that the government denied the defendant his consular assistance and his lawyer did nothing about it. Id. The court stated that defense attorneys representing a foreign national should know to advise their clients of the right to consular access and to raise the issue with the presiding judge. Id. at 411. As such, the defendant's counsel was deficient; the court then turned to the prejudice prong of Strickland. Id. at 411-412.

To show prejudice, the defendant must "explain the nature of the assistance he might have received had he been alerted to his Article 36 rights."

Osagiede v. United States, 543 F.3d at 413. The court further stated that "to merit an evidentiary hearing, [the defendant] must indicate how he proposes to show a realistic prospect of consular assistance and provide some credible indication of facts reasonably available to him to support his claim." Id. The court found that the record revealed that the defendant had a special need for services within the power of the consulate; there were tape recordings of individuals with strong Nigerian accents that were difficult to decipher and the consulate might have provided funds for a proper analysis of these tapes or might have identified regional dialects, offered an accurate voice analysis or even translated the wiretaps. Id. The Nigerian consulate also might have located the defendant's cousin who was connected to the case, but had returned to Nigeria.

The Osagiede court also noted that the defendant must show that the Nigerian consulate would have assisted him. Osagiede v. United States, 543 F.3d at 413. "The decision to render assistance to a foreign detainee, which gives significance to the obligations imposed by the Convention, rests in the discretion of the Nigerian consulate." Id. To obtain an evidentiary hearing, the defendant had to make a credible assertion of the assistance the consulate would have provided, but wasn't required to submit official documents, statements or affidavits from the Nigerian consulate in advance of the hearing. Id. At the hearing, the defendant would need to provide evidence sufficient to prove he was prejudiced by the failure to notify him of his Article 36 rights. Id. at 413, n. 13.

Mr. Choiniere submits an affidavit claiming that he was never advised of his rights under Article 36 and received no communication from his consulate. The government responded by attaching a copy of the fax sent to the Canadian Consulate shortly after Mr. Choiniere was arrested. The government doesn't contend that Mr. Choiniere was notified of his right to consular assistance. To establish prejudice, Mr. Choiniere must establish that the consulate could have assisted with his case and would have done so. Id. at 413. He needs to "provide some credible indications of facts reasonably available to him to support his claim." Osagiede v. United States, 543 F.3d at 413.

The record doesn't suggest that Mr. Choiniere had any special need for services typically within the power of the consulate. He doesn't allege that he needed assistance locating witnesses or evidence, translating documents, or understanding the United States's legal system. Mr. Choiniere had the financial means to hire his own defense attorney and an investigator to assist in his defense. Further, Mr. Choiniere also hasn't shown that even if he was informed of his right to contact the consulate, the consulate would have provided assistance. This case therefore is distinguishable from Osagiede in that the record before the court doesn't show evidence of possible prejudice. This court finds that Mr. Choiniere's claims relating to the Vienna Convention don't warrant an evidentiary hearing.

*Credibility, Discovery, and Sufficiency of Evidence*

Mr. Choiniere raises additional claims involving credibility of witnesses, discovery of documents and sufficiency of evidence. Mr. Choiniere first claims that he was prejudiced because the jury heard incorrect testimony from two government witnesses that chiropractors couldn't lawfully prescribe back braces for purposes of billing Medicare; he says his attorney should have impeached these witnesses and offered accurate evidence. While the accuracy of the witnesses' testimony is more complicated than Mr. Choiniere seems to think,[7] the

---

[7] While certain government witnesses acknowledged that as an authorized supplier of durable medical equipment, Mr. Choiniere could supply back braces, they effectively testified that he couldn't bill Medicare for the braces without a physician referral/order. The CMS Medical Benefit Policy Manual, Chapter 15, Section 130, provides that back braces are covered under Medicaid "when furnished incident to physicians' services or on a physician's order." The term "physician" includes a chiropractor but only for treatment by means of manual manipulation of the spine to correct a subluxation. 42 U.S.C. § 1395x(r). "Coverage of chiropractic services is specifically limited to treatment by means of manual manipulation, i.e., by use of the hands. Additionally, manual devices . . . may be used by chiropractors in performing manual manipulation of the spine. However, no additional payment is available for use of the device, nor does Medicare recognize an extra charge for the device itself. . . . No other diagnostic or therapeutic service furnished by a chiropractor or under the chiropractor's order is covered." The Medical Benefit Policy Manual, Chapter 15, section 240.1; see also 42 CFR 410.21.

As noted by Mr. Choiniere, CMS Medicare Claims Processing Manual, Chapter 12, Section 220 states that "[e]xcept for restrictions to chiropractor services as stipulated in §§ 1861 (s)(2)(A) of the Social Security Act, chiropractors (specialty 35) can bill for durable medical equipment, prosthetics, orthotics and supplies if, as the supplier, they have a valid supplier number . . ." (Emphasis added). Section 1861(s)(2)(A) of the Social Security Act provides that "[t]he term 'medical and other health services' means any of the following items or services: . . . services and supplies . . . furnished as an incident to a physician's professional service, of kinds which are commonly furnished in physicians' offices and are commonly either rendered without charge or included in the physicians' bills . . ." Mr. Choiniere hasn't shown that he could prescribe the braces that he supplied based on his treatment as a chiropractor under these provisions, especially given the limitations of chiropractic services allowed under Medicare.

court needn't address that issue and assumes for purposes of Mr. Choniere's petition that his contention is valid.

Mr. Choiniere wasn't being prosecuted because he was prescribing or supplying back braces as a chiropractor. He was prosecuted because he was over-billing Medicare, Medicaid and private health insurers for the back braces and in some cases prescribing the braces for no medical purpose. Any testimony that chiropractors couldn't lawfully prescribe back braces was collateral to the issues before the jury and wasn't presented to them for determination. Given the extent of the government's evidence as to the counts in the indictment, Mr. Choiniere hasn't raised a reasonable probability that the trial's outcome would have differed had his counsel impeached or contradicted these witnesses on that point. See Velarde v. United States, 972 F.2d 826, 828 (7th Cir. 1992) (no reasonable probability that outcome would have been different had defendant's counsel attempted to correct perjured testimony); see also Eckstein v. Kingston, 460 F.3d 844, 848 (7th Cir. 2006) (noting that in assessing whether there has been prejudice, courts look at all of the evidence presented at trial and an attorney's errors are more likely to be prejudicial when a verdict is based on weak evidence than when there is overwhelming support for the verdict in the record). Mr. Choiniere's claim that he could lawfully bill Medicare for back braces as a chiropractor wouldn't have eroded the strength of the government's case of health care fraud.

Mr. Choiniere also argues that his counsel was ineffective for not subpoenaing telephone records to show he called physicians for medical referrals. The issue at trial wasn't whether Mr. Choiniere called certain primary care physicians, but rather whether he received referrals from these physicians. Mr. Choiniere's billings indicated that he had received referrals from certain physicians, but some of those physicians testified at trial that they had never made any such referrals. Phone records might have established that Mr. Choiniere called the physicians, but wouldn't have rebutted the testimony presented at trial.

Mr. Choiniere also submitted an affidavit stating that he provided three written physician referrals to his counsel and information that two other patients had to consult their respective physicians before he obtained a referral. Evidence that Mr. Choiniere received some referrals doesn't contradict the government's evidence presented at trial that Mr. Choiniere falsified other referrals. Attorneys may have a "tactical reason not to make weak arguments . . . [which] may distract the court from the strong arguments and as a result make it less likely to rule in the defendant's favor." See United States v. Rezin, 322 F.3d 443, 446 (7th Cir. 2003). "[T]rial counsel [need not] track down every lead or . . . personally investigate every evidentiary possibility before choosing a defense and developing it." United States v. Balzano, 916 F.2d 1273, 1294 (7th Cir. 1990) (quoting Sullivan v. Fairman, 819 F.2d 1382, 1392 (7th Cir. 1987)).

The record doesn't indicate how Mr. Choiniere's phone records or the three written physician referrals would have a reasonable probability of affecting the

outcome of trial. Similarly, the evidence is insufficient to establish that an investigation of other patients who obtained referrals or physicians who had made referrals would have given him a reasonable shot at acquittal.

Mr. Choiniere further contends that there was insufficient evidence to support a conviction under 18 U.S.C. § 1347[8] because he wasn't aware that his conduct was unlawful. Because this claim is procedurally defaulted, the court focuses on Mr. Choiniere's argument that his counsel was ineffective for failing to raise this issue during trial or on appeal. Mr. Choiniere cites to United States v. Dearing, 504 F.3d 897 (9th Cir. 2007) in support of his claim that to establish the willfulness element of 18 U.S.C. § 1347, the government had to prove that the administrative agency notified him that his conduct was illegal, yet he continued such illegal practices. The defendant in Dearing was part-owner of a mental health clinic and visited the facility once or twice a month for business meetings. United States v. Dearing, 504 F.3d at 899. The court found the evidence sufficient to support a conviction for health care fraud because he was put on notice of the clinic's fraudulent billing actions, made no effort to correct these actions and dissuaded serious internal investigation into the company's problems. United

---

[8]The statute makes it a crime to "knowingly and willfully execute[ ], or attempt[ ] to execute, a scheme or artifice: ... (1) to defraud any health care benefit program; or ... (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services . . . ." 18 U.S.C. § 1347; see also United States v. Davis, 471 F.3d 783, 785, n.1 (7th Cir. 2006).

States v. Dearing, 504 F.3d at 901. Dearing doesn't stand for the proposition that the only way to establish the willfulness element is to prove that the defendant had been notified that his conduct was unlawful and yet continued to engage in that conduct.

The jury was instructed that the government had to prove beyond a reasonable doubt that Mr. Choiniere participated in a scheme to defraud by means of false pretenses, representations or promises and did so knowingly and with the intent to defraud. (Jury Instr. No. 17). The jury was further instructed that the phrase "intent to defraud" means that the "acts charged were done knowingly with the intent to deceive or cheat the victims in order to cause a gain of money or property to the defendant." (Jury Instr. No. 17). After hearing the wording of 18 U.S.C. § 1347, the jury was told that a defendant acts "knowingly" when he is conscious and aware of his actions, realizes what he is doing or what is happening around him and doesn't act because of ignorance, mistake, or accident and acts "willfully" when he knowingly performs an act, "deliberately and intentionally, as contrasted with accidentally, carelessly or unintentionally." (Jury Inst. No. 26). Jury Instruction No. 25 further provided:

> During this trial there has been extensive evidence as to government regulations concerning health care claims with the government. If you find from the evidence that there was a failure of the defendant to comply with the various administrative regulations, this is not automatically an act of health care fraud. The defendant must act with intent to defraud.

"The district court properly instructed the jury on each of the elements necessary to convict Choiniere of the charges presented to the jury." United States v. Choiniere, 517 F.3d 967, 972 (7th Cir. 2008).

A Medicare coding expert, a neurosurgeon, a certified orthotist, and two chiropractors all testified that the belt wasn't a "custom-fabricated molded-to-patient lumbar-sacral support" belt, as Mr. Choiniere had represented to Medicare. The belt wasn't custom fabricated or molded to patients; instead Mr. Choiniere would usually have different sizes of belts at the clinics for sale to his clients. The jury heard testimony that the belt was a prefabricated lumbar support, similar to a weightlifting belt, that should have been billed for less than $50. Mr. Choiniere billed Medicare and Indiana Medicaid $1,370 per belt.

Before prescribing the belts, Mr. Choiniere either performed cursory examinations or none at all; he didn't x-ray his patients or perform any other tests. Mr. Choiniere usually didn't even perform chiropractic adjustments. The evidence showed that Mr. Choiniere manipulated patient records so he would receive reimbursements for his belts. The jury also heard testimony that Mr. Choiniere dispensed belts to patients who didn't have back pain and for whom it wasn't medically appropriate to wear a lumbar support.

There was sufficient evidence presented to allow the jury to determine that Mr. Choiniere acted willfully and knowingly, and therefore, any argument by Mr. Choiniere's counsel to the contrary would have been unsuccessful.

The record also indicates that Mr. Choiniere's counsel argued that the billing codes for the back braces were confusing and that the defendant had billed in good faith without criminal intent. His counsel vigorously cross-examined the government's witnesses, put on a number of defense witnesses conveying this theory to the jury, moved for judgment on the evidence, proposed several jury instructions relating to intent, and argued on appeal that certain intent to defraud instructions should have been submitted to the jury. These actions establish that Mr. Choiniere received effective representation.

*Arguments Raised in Reply Brief*

In an appendix filed with Mr. Choiniere's reply, he raises new arguments in support of his ineffective assistance of counsel claim. Mr. Choiniere contends that his counsel was ineffective on appeal for failing to address several cases, including United States v. Scialabba, 282 F.3d 475 (7th Cir. 2002) and United States v. Santos, No. 2:01-CV-638, 342 F. Supp. 2d 781 (N.D. Ind. 2004), *aff'd* Santos v. United States, 461 F.3d 886 (7th Cir. August 25, 2006); *aff'd* United Sates v. Santos, 128 S. Ct. 2020 (June 2, 2008) (definition of "proceeds" in the money

laundering statute)[9] and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) (sentencing defendant beyond the prescribed statutory maximum).

These arguments are waived because they were made for the first time in an attachment to his reply brief. Pro se litigants are entitled to some leeway in preparing and presenting their arguments, but Mr. Choiniere's pro se status doesn't exempt him from the long-standing prohibition on raising new claims in reply briefs. <u>Wright v. U.S.</u>, 139 F.3d 551, 553 (7th Cir. 1998); <u>see also</u> <u>Amerson v. Farrey</u>, 492 F.3d 848, 852 (7th Cir. 2007).

The new arguments wouldn't succeed if the court addressed their merits. The defendant in <u>United States v. Santos</u> had been convicted of illegal gambling and money laundering promotion. <u>United States v. Santos</u>, 128 S. Ct. at 2023. The issue before the Supreme Court was whether the term "proceeds" in the federal money-laundering statute, 18 U.S.C. § 1956(a)(1), meant "receipts" or "profits." <u>United States v. Santos</u>, 128 S. Ct. at 2023. The Court reviewed the Seventh Circuit opinion in <u>United States v. Scialabba</u>, 282 F.3d 475, 478 (7th Cir. 2002), which held that the federal money-laundering statute's prohibition of transactions involving criminal "proceeds" — 18 U.S.C. § 1956(a)(1) — applies only to transactions involving criminal profits, not criminal receipts. <u>United States v.</u>

---

[9]For purposes of ineffective assistance of counsel, the relevant decisions are those that were available to counsel at the time of Mr. Choiniere's appeal, namely <u>United States v. Scialabba,</u> 282 F.3d 475 (7th Cir. 2002) and <u>Santos v. United States</u>, 461 F.3d 886 (7th Cir. August 25, 2006). These decisions however were affirmed by the Supreme Court in 2008.

Santos, 128 S. Ct. at 2023. In a plurality opinion written by Justice Scalia, the Court agreed. Id. at 2025.[10]

Mr. Choiniere was convicted under 18 U.S.C. §1957, not § 1956. Mr. Choiniere's jury was instructed that he must have knowingly engaged or attempted to engage in a monetary transaction in criminally derived property exceeding $10,000. (Jury Instr. No. 19). The jury was given the definition of "criminally derived property" found in § 1957: "any property constituting, or derived from, proceeds obtained from a criminal offense." (Jury Instr. No. 20). Although the instructions didn't define "proceeds," it isn't clear that the holdings in Scialabba and Santos apply to § 1957. The Southern District of Illinois found that "[a]lthough the Court has held that Scialabba applies to the petitioner's substantive convictions under § 1956(a)(1), it is not persuaded that the holding in Scialabba would apply to . . . § 1957 . . . ." See Baker v. United States, 2006 WL 2850029, *4 (S.D. Ill. 2006). Mr. Choiniere's counsel didn't act outside the wide range of professionally competent assistance by not requesting a jury instruction on the definition of proceeds or raising the issue on appeal.

---

[10]The swing vote came from Justice Stevens; while he agreed with that definition of proceeds as applied to the crime of illegal gambling, he disagreed that this definition should apply to all predicate crimes. United States v. Santos, 128 S. Ct. 2030-2031. In agreement with the dissent, he noted that in other contexts - namely, when the sale of contraband and the operation of organized crime syndicates are involved - the legislative history of the statute suggests that Congress intended for all receipts to count as "proceeds." Id. at 2032. According to Stevens, the word "proceed" would therefore have different meanings in different contexts. Id.

Even if this narrower definition of "proceeds" applies to §1957, Mr. Choiniere doesn't refer to any evidence that could establish that had the jury been given an instruction defining proceeds as "profits", there is a reasonable probability that he would have been acquitted on some of those counts. See United States v. Price, No. 2:07-CV-12, 2008 WL 3085882, *2 (N.D. Ind.) (finding no prejudice by counsel's failure to request a multiple conspiracy instruction where the evidence was insufficient to establish such a conspiracy). In fact, Mr. Choiniere doesn't even make this allegation; he simply contends that his counsel was ineffective for not arguing Scialabba and Santos on appeal. Because Mr. Choiniere doesn't assert that some of the money laundering convictions were based on transactions involving gross proceeds, he can't establish that his counsel's representation was deficient or caused him to be prejudiced.

Mr. Choiniere also contends that his counsel should have addressed Apprendi v. New Jersey, 530 U.S. 466 (2000) on appeal. Again, because this claim was raised for the first time in an attachment to Mr. Choiniere's reply brief, it is waived. Regardless, Apprendi only applies when a defendant is sentenced above the statutory maximum sentence for an offense. See United States v. Partee, 301 F.3d 576, 578 (7th Cir. 2002) (citing United States v. Jones, 245 F.3d 645, 651 (7th Cir. 2001)). Mr. Choiniere was convicted of health care billing fraud (18 U.S.C. § 1347), fraudulent concealment of overpayment of health care benefits (42 U.S.C. §1320a-7b(a)(3)), and money laundering (18 U.S.C. § 1957). The maximum statutory penalty for each of these crimes is 10 years, 10 years and 5 years,

respectively. For purposes of sentencing, the court grouped the counts together and sentenced Mr. Choiniere to a term of 151 months' imprisonment. Although Mr. Choiniere's sentence is greater than the maximum sentence on any one count, it is far below the maximum sentence for the aggregate.

Mr. Choiniere was sentenced within the statutory maximum sentence to which he was exposed; the court could have imposed consecutive sentences, but instead grouped them together and sentenced Mr. Choiniere to 151 months (well within the combined statutory maximum). See United States v. Hernandez, 330 F.3d 964, 982 (7th Cir. 2003) (finding no prejudice even though the defendant's sentenced exceeded the statutory maximum for one or more of the counts, where it didn't extend beyond the sentence that the court could have imposed had it stacked the sentences of all the counts consecutively); see also United States v. West, 207 Fed. Appx. 719, 722-723 (7th Cir. 2006). Mr. Choiniere wouldn't have received a shorter sentence based on the reasoning in Apprendi, see Oregon v. Ice, ___ S. Ct. ____, 2009 WL 77896 (January 14, 2009) (in addressing a state sentencing statute, the Court found that the Sixth Amendment doesn't prohibit judges from imposing consecutive sentences based on facts not found by a jury; declining to extend the application of Apprendi), so he wasn't prejudiced by his counsel's alleged deficient performance.

Mr. Choiniere's new allegations, even if not waived, would be insufficient to support a finding of ineffective assistance of counsel, so no evidentiary hearing

would be required. <u>See</u> <u>Aleman v. United States</u>, 878 F.2d 1009, 1012 (7th Cir. 1989).

*Discovery Motions and Request for Counsel*

Mr. Choiniere has filed numerous requests for discovery and a motion for appointment of counsel. He seeks the transcripts from the grand jury and search warrant proceedings to support his claim of lack of subject matter jurisdiction, improper involvement of administrative agents in the criminal prosecution, and inaccurate testimony regarding his authority to prescribe back braces. He also seeks HHS's and the DOJ's employee manual/handbook concerning their civil and criminal investigative procedures for similar purposes. Mr. Choiniere further seeks the release of all agency records supporting any final action in which he was a party. Finally, Mr. Choiniere seeks all indictments filed in this court from 2000 to the present issued under 18 U.S.C. § 1347 and 42 U.S.C. § 1320a-7b to support his claim that the government acted in a manner inconsistent with the above statutes by failing to prove that he "knowingly" and "willfully" engaged in health care fraud.

When a habeas corpus petitioner provides reasons for discovery requests, the district court has discretion to grant discovery upon a showing of "good cause." Rules Governing Section 2255 Proceedings, 6(a). Good cause exists where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled

to relief." <u>United States v. Hull</u>, No. 2:02-CV-2, 2006 WL 752481 at *8 (N.D. Ind. 2006) (citing <u>Bracy v. Gamley</u>, 520 U.S. 899, 909 (1997)).

This court isn't convinced that the documents Mr. Choiniere seeks would lead to facts demonstrating his entitlement to relief. As discussed, this court had subject matter jurisdiction over Mr. Choiniere's criminal prosecution. Further discovery on this issue would be unavailing. Additionally, Mr. Choiniere hasn't shown how the requested discovery would demonstrate that his counsel was ineffective. He seeks documents to support his claim that the administrative agents were improperly involved in the criminal prosecution, but he only makes conclusory allegations to support this claim; he provides no specific facts or evidence. Mr. Choiniere hasn't asserted specific allegations to convince the court that he could, if the facts were fully developed, demonstrate his entitlement to relief on this basis. <u>See</u> <u>Jones v. United States</u>, 231 Fed. Appx. 485, 488 (7th Cir. 2007) (unpublished) ("[Speculation does not constitute good cause."); <u>United States v. Curtner</u>, 2008 WL 905923, *1 (C.D. Ill. 2008) (noting that a defendant isn't entitled to conduct a fishing expedition with the hope of finding something). Similarly, as established, Mr. Choiniere's claims relating to the sufficiency of evidence are without merit.

Mr. Choiniere's request for the grand jury transcripts is also denied. "To obtain grand jury material, despite the presumptive secrecy imposed by [Rule] 6(e), a litigant must show that the information 'is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater

than the need for continued secrecy, and that [the] request is structured to cover only material so needed.'" United States v. Campbell, 324 F.3d 497, 499 (7th Cir.2003) (quoting Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222 (1979)). A "request for grand jury material must be more than a request for authorization to engage in a fishing expedition" which might turn up helpful evidence. See In re EyeCare Physicians of Am., 100 F.3d 514, 518 (7th Cir. 1996) (quoting Lucas v. Turner, 725 F.2d 1095, 1101 (7th Cir. 1984)). "Put simply, the secrecy of the grand jury proceeding will not be broken except where the party seeking disclosure can show a 'compelling necessity' or a 'particularized need.'" Matter of Grand Jury Proceedings, Special September 1986, 942 F.2d 1195, 1198 (7th Cir.1991) (citing Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. at 222)). Mr. Choiniere hasn't made that showing here.

Mr. Choiniere also moved for appointment of counsel to assist in his § 2255 petition. There is no right to appointed counsel at the post-conviction stage. See Powell v. Davis, 415 F.3d 722, 727 (7th Cir. 2005). Under 18 U.S.C. § 3006A(a)(2), the court may appoint counsel if "the interests of justice so require." Courts weigh five factors in exercising this discretion: "(1) whether the merits of the claim are colorable; (2) the ability of the indigent to investigate crucial facts; (3) whether the nature of the evidence indicates that the truth will more likely be exposed where both sides are represented by counsel; (4) the capability of the indigent to present the case; and (5) the complexity of the legal issues raised by the complaint."

United States v. Fowler, 1:03-CR-38, 2007 WL 3046773, *4 (N.D. Ind. 2007) (citing Wilson v. Duckworth, 716 F.2d 415, 418 (7th Cir.1983)).

After reviewing Mr. Choiniere's many filings in this court, it is apparent that he is well capable of articulating the contours of his arguments. The absence of counsel in this case wouldn't result in an unfair proceeding; as already discussed, Mr. Choiniere's claims have no merit and he wouldn't stand any better chance of prevailing upon further investigation or with the assistance counsel.

CONCLUSION

For the reasons stated above, the court DENIES Mr. Choiniere's § 2255 petitions (document nos. 34, 37, 49, 51),[11] discovery requests (document nos. 38, 39, 40, 41, 42, 48)[12] and motion for appointment of counsel (document no. 52)[13].

SO ORDERED.

ENTERED: ____January 14, 2009_____

___/s/ Robert L. Miller, Jr._____
Chief Judge
United States District Court

---

[11] The court has considered Mr. Choiniere numerous petitions in this case: motion for relief from judgment (document no. 34); amendment to motion (document no. 37); second amendment to motion (document no. 49); and motion to vacate, set aside or correct sentence (document no. 51). These same documents were filed in the criminal case - 3:05-CR-56 - as documents nos. 208, 212, 225 and 227, respectively.

[12] These same documents were filed in the criminal case as document nos. 213, 214, 215, 216, 217 and 224.

[13] This document was filed in the criminal case as document no. 228.

cc: B. Choiniere
    AUSA